IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shawna Denise Jeffcoat McEachern, ) | C/A No. 0:15-1194-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Shawna Denise Jeffcoat McEachern, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform her past relevant work; and

(5)     whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In September 2011, McEachern applied for DIB, alleging disability beginning April 18, 2011. McEachern's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on July 17, 2013, at which McEachern, who was represented by Mario A. Pacella, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on December 6, 2013 finding that McEachern was not disabled. (Tr. 10-20.)

McEachern was born in 1964 and was forty-six years old on April 11, 2011—her alleged disability onset date. (Tr. 17, 144.) She has a college education and has past relevant work experience as a computer aide at an elementary school and a sales assistant. (Tr. 156.) McEachern alleged disability due to bipolar disorder, severe depression, anxiety, insomnia, and suicidal/violent tendencies. (Tr. 155.)

In applying the five-step sequential process, the ALJ found that McEachern had not engaged in substantial gainful activity since April 18, 2011—her alleged onset date. The ALJ also determined that McEachern's cardiac dysrhythmias, bipolar I disorder without mention of psychotic behavior, and status post right lateral internal sphicterotomy and posterior fissurectomy were severe impairments. However, the ALJ found that McEachern did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that McEachern retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) except that the claimant can never climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold,



> extreme heat, and humidity, as well as fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. The claimant can perform unskilled work but can have no interactions with the public.

(Tr. 14.) The ALJ found that McEachern was unable to perform any past relevant work, but that considering McEachern's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that McEachern could perform. Therefore, the ALJ found that McEachern was not disabled from April 18, 2011 through the date of her decision.

The Appeals Council denied McEachern's request for review on February 9, 2105, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

McEachern raises the following issues for this judicial review:

A. Whether the Administrative Law Judge Erred in Disregarding the Opinion of Plaintiff's Treating Physician.

B. Whether the Administrative Law Judge Erred in Finding Plaintiff Not Fully Credible.

C. Whether the Administrative Law Judge Erred in Finding the Purported Testimony of Plaintiff's Husband Partially Credible.

(Pl.'s Br., ECF No. 7.)

## DISCUSSION

**A.  Treating Psychiatrist**

McEachern first argues that the ALJ erred in evaluating opinion evidence from Dr. William Walkup, McEachern's treating psychiatrist. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434

F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

On June 26, 2013, Dr. Walkup completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," indicating that he first began treating McEachern for bipolar disorder and depression in October 2011. Dr. Walkup checked boxes indicating that McEachern's mental health problems had a moderate effect on McEachern's activities of daily living and social functioning and marked effect on her concentration, persistence, or pace. (Tr. 387.) Dr. Walkup

stated that McEachern suffered episodes of decompensation monthly to every two months. Dr. Walkup marked that McEachern experienced anhedonia or pervasive loss of interest in almost all activities; sleep disturbance; psychomotor agitation or retardation; decreased energy; difficulty in thinking or thoughts of suicide; pressure of speech; flight of ideas; decreased need for sleep; and involvement in activities that have a high probability of painful consequences that are not recognized. (Tr. at 387-88.) Dr. Walkup also marked boxes indicating that McEachern was markedly or extremely impaired in numerous work related areas. (Tr. 388-89.) Dr. Walkup stated that McEachern could not work on a full-time basis and would miss work three or more days per month as a result of her mental health impairments. Finally, Dr. Walkup stated that McEachern's disability from work began on October 1, 2010. (Tr. 390.)

In evaluating this opinion, the ALJ stated the following:

> I give little weight to the mental source statement by Dr. Walkup opining that the claimant had marked to extremely impaired psychiatric work related limitations including, among others, pressured speech, sleep disturbance, and involvement in activities that have a high probability of painful consequences that are not recognized. This extreme opinion is not supported by the medical evidence of record as a whole or by the source's own treatment records. Moreover, the statement notes that the claimant's disability began on October 1, 2010 when even the claimant is not alleging disability until April 18, 2011 (Exhibit 16F).

(Tr. 16.)

In considering McEachern's mental allegations, the ALJ first observed that McEachern was "hospitalized in May 2011 for several days due to increasing depression and for stabilization." (Tr. 15.) The ALJ stated that during the hospitalization McEachern reported problems with concentration, indecisiveness, and crying; denied a history of mental health counseling and psychiatric hospitalization; and reported a history of depression but that "she was typically able to



come out of her depressive symptoms within 2 weeks on her own." (Id.) The ALJ observed that McEachern had been prescribed medications such as Zoloft, Valium, and Wellbutrin by her general practitioner, and her records revealed a history of intensive outpatient treatment for chemical dependency, but that McEachern denied a current history of alcohol or illicit drug use. The ALJ stated that McEachern "was diagnosed with bipolar I disorder most recent episode depression; generalized anxiety disorder with panic attacks; and narcissistic and obsessive-compulsive personality features." (Id.) The ALJ observed that McEachern participated in family therapy sessions and individual advocate sessions and was discharged to outpatient counseling.

The ALJ stated that in June, July, and August 2011, McEachern followed up with her primary care physician, but that there were no mental status examination notes. The records indicated in July 2011 that McEachern had stopped taking Wellbutrin, and in August 2011 that she reported feeling "quite lowly." (Id.)

The ALJ found that in September 2011, McEachern had an initial psychiatric evaluation with Dr. Walkup where McEachern "reported suicidal ideation with a plan to cut her wrists, but denied intent. She also reported violent thoughts. On exam, she was alert and oriented. She had a good sleep pattern. She had decreased interest in usual daily activities, some irritability, depressed mood, and decreased energy. It was noted that her hair was unkempt, and her affect was mildly constricted. Abilify was prescribed." (Tr. 15-16.) The ALJ stated that in November 2011, Palmetto Health Behavioral Care Day Treatment Program admitted McEachern through Dr. Walkup. The ALJ observed that McEachern was admitted "with a diagnosis of Bipolar Disorder I and report of experiencing depressed mood, anxiety, irritability, difficulty concentrati[ng], memory loss, low motivation, anhedonia, hopelessness and helplessness" and that "[h]er primary stressors were lack



of pleasurable activities in her life due to mood and being in the process of applying for long-term disability." (Tr. 16.) Further, a " multidisciplinary treatment team plan including individual, group and family therapy through social work, nursing, dietician, chaplaincy, yoga and activity therapy was recommended." (Id.)

The ALJ found that records from December 2011 indicated that (1) McEachern "reported feeling somewhat less depression, although she experienced regular panic attacks during which she used breathing techniques, distraction and mindful self-talk to cope with her anxiety," and (2) she "repeatedly missed sessions due to transportation issues." (Id.) Finally, these records state that McEachern "was discharged from multidisciplinary services as she had 'received coping skills adequate for continued function within individual outpatient services by appointment.' " (Id.) (citing Tr. 281).

The ALJ found that McEachern continued psychiatric treatment with Dr. Walkup and stated that

> [s]erial records show that her thought processes remained logical and coherent, her speech normal, and her sleep was generally good with medication. (Not all of her sessions were conducted by Dr. Walkup; some sessions were conducted by licensed social worker Kelly Helms). While March and April 2012 records show continuing complaint of depression with fatigue and side effect of tremor, with medication adjustments, by May 2012 records state that the claimant was doing well and her mood was improved. A mental status evaluation described her as sleeping well, good appetite, low energy level, euythymic mood, pleasant, and cooperative. She had logical and coherent thought process, and normal speech (Exhibits 7F, 9F, and 14F).

(Tr. 16.) Finally, the ALJ observed that more recent psychiatric records from July 2013 reveal that McEachern "was having some marital conflict and had been depressed the previous couple of weeks with poor interest and motivation. However, on examination, her mood was generally good. Her

energy was low, concentration poor, affect constricted; but she was cooperative and pleasant, logical and coherent (Exhibit 17F)." (Id.)

McEachern argues that the ALJ erred in evaluating Dr. Walkup's opinion because she "engaged in a strained reading of the record, pulling out notations by Dr. Walkup that Plaintiff was doing well, without measuring those statements to the record as a whole, including Plaintiff's two hospitalizations for her mental health problems in 2011." (Pl.'s Br. at 14, ECF No. 7 at 14.) However, the ALJ's decision clearly reflects that she considered the two hospitalizations, one of which she stated was through Dr. Walkup. Moreover, contrary to McEachern's arguments, the ALJ's decision also reflects acknowledgment of notes indicating suicidal ideation by McEachern. Although the ALJ may not have mentioned each record reflecting such a finding, it is clear that she was aware of such notations when weighing Dr. Walkup's opinion.

Thus, upon review of the ALJ's decision and the record, the court concludes that the ALJ applied the relevant factors in evaluating Dr. Walkup's opinion and finds that McEachern has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Walkup's opinion is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). The decision reflects that the ALJ weighed Dr. Walkup's opinion and reasonably found that the medical findings and observations in the record

did not support it.² Although McEachern may be able to point to select medical records that arguably support Dr. Walkup's opinion, she has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of her duties in weighing the evidence, properly relied on medical records and treatment notes in determining that Dr. Walkup's opinion was unsupported. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). For all of these reasons, the court finds that McEachern has not shown that the ALJ's decision with regard to Dr. Walkup's opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**B.     Credibility**

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,³ during which the ALJ must expressly consider "the intensity

---

² Moreover, to the extent Dr. Walkup opined that McEachern is disabled or unable to work, such an opinion is reserved to the Commissioner and not entitled to special significance. See 20 C.F.R. § 404.1527(d) (explaining that the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance).

³ The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

    (i)      Your daily activities;
    (ii)     The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii)    Precipitating and aggravating factors;
    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
    (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

PJG

    (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarized McEachern's allegations as follows:

> Throughout the record and at the hearing, the claimant alleges that she is unable to work due to a combination of disabling impairments including bipolar disorder, depression, anxiety with anxiety attacks, narcissistic and obsessive compulsive personality disorder, gastroesophageal reflux disease, irritable bowel syndrome with intermittent incontinence, and rectal prolapse. The claimant maintains that she has panic attacks and cannot make herself do anything. She tries to do one task a day but allegedly cannot accomplish that task. She has reported that she does some housework although she feels overwhelmed. She drives about three times a week.

(Tr. 14.)

The ALJ found that McEachern's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible based on the record in this case. After summarizing the evidence of record (most of which is discussed above, see supra Section A.), the ALJ concluded that

> [i]n sum, I considered but granted little probative weight to the claimant's testimony regarding the severity of her impairments. The severity of the claimant's allegations, including that she is unable to accomplish tasks and has frequent panic attacks, is not supported by the record. For example, July 23, 2012 record's "Interval comments" state, "Generally doing well. Has some down times and anxiety that are brief." August 2012 records state that the claimant was "Stable, Doing well." The plan was to "Continue same, Provided supportive therapy, Fu 1 month." In the September 18, 2012 visit, records note no suicidal/homicidal ideation, no psychosis, good mood and interest, with anxiety noted as "Mild, Moderate." This assessment further indicated, "Stable." The visit notation also stated, "She and friend are planning to record some music." Although claimant testified at the hearing that the music recording session, "Never happened", this along with the other medical evidence of record indicates that claimant is not as limited as she alleges. Regarding her physical impairments, medical records show that her conditions have been and continue to be treated with no indication of limitations beyond that provided in the residual functional capacity

determination. The residual functional capacity generously accommodates any of the claimant's alleged concentration and pain symptoms.

(Tr. 17.)

McEachern challenges some of the reasons mentioned by the ALJ. Specifically, she argues that the ALJ improperly relied on one treatment note indicating McEachern had no suicidal ideation when a year earlier she was hospitalized and a few months earlier treatment notes indicated "chronic suicidal ideation." Further, McEachern argues that the fact that she was unable to accomplish her goal of recording some songs with a friend should support her credibility. McEachern asserts that a record reflecting that she was feeling better on an occasion and expressed a desire to record some songs with a friend should be viewed as a snapshot in time, part of the cyclical nature of bipolar disorder, and not representative of her overall health.

Upon review of the records as a whole and the parties' briefs, the court finds that McEachern has failed to demonstrate that the ALJ's determination that McEachern was not entirely credible is unsupported or controlled by an error of law. As stated above, it the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision appears to reflect that she considered the relevant factors in weighing McEachern's credibility. See 20 C.F.R. § 404.1529(c)(3). As detailed above, the ALJ thoroughly summarized McEachern mental health treatment during the relevant time period, including but not limited to the hospitalizations and reports of suicidal ideation as well as months of mild or moderate mental status examinations from May to September 2012 and no evidence of any complaints of significant mental health symptoms from September 2012 through mid-2013. Therefore, the court



disagrees with McEachern's assertion that the ALJ improperly considered one treatment note in isolation. Further, even if the court were to agree with McEachern on her challenges, the court finds that McEachern has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

**C.     Lay Evidence**

Finally, McEachern argues that the ALJ erred in evaluating lay evidence from her husband. In addition to evidence from acceptable medical sources, the ALJ "may" use evidence from other non-medical sources, such as evidence from spouses, parents, and friends, to show the severity of a claimant's impairment(s) and how it affects his or her ability to work. 20 C.F.R. § 404.1513(d)(4); SSR 06-03p, 2006 WL 2329939, at *2. "[I]nformation from [non-medical sources] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function[;]" however, in considering evidence from these sources, "it would be appropriate to consider such factors as the nature and extent of the

relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *2, *6.

In this case, the ALJ stated the following regarding McEachern's husband:

> I note that the claimant's husband wanted to testify at the hearing but pursuant to agreement with the representative, I stipulate that the husband's testimony would have been supportive of the claimant's testimony. However, since the claimant's husband is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided would be considered partially credible. Moreover, by virtue of his relationship with the claimant, he cannot be considered a disinterested third party witness whose statements would not be colored by affection for the claimant.

(Tr. 14.) During the hearing, the ALJ stated that she would stipulate that McEachern's husband would support McEachern's testimony in terms of what she does or what he does at home; however, the ALJ stated that McEachern's husband could not comment on what the ALJ reads in the treatment notes, stating that he is not a doctor or medical professional. (See Tr. 59-61.)

McEachern challenges the ALJ's statement that her husband's testimony was only partially credible because he lacked medical training, arguing that this reason "would essentially nullify the Commissioner's own regulations that proof of disability may come in the form of statements by others about 'your restrictions, your daily activities, your efforts to work.'" (Pl.'s Br. at 18, ECF No. 7 at 18) (quoting 20 C.F.R. § 404.1512(b)). However, the court finds that McEachern has failed to demonstrate that in weighing evidence from non-medical sources, this is not an appropriate factor to consider in conjunction with other factors. The court disagrees that by including this factor it would nullify § 416.1512(b). See 20 C.F.R. § 404.1512(b) (including in the definition of "evidence," "[s]tatements you or others make about your impairment(s), your restrictions, your daily activities, your efforts to work, or any other relevant statements you make to medical sources during



the course of examination or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings). As discussed above, the ALJ may use evidence from non-medical sources, and in considering it, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6.

Moreover, even if the court were to agree that it was error for the ALJ to consider this factor, the ALJ also found that "by virtue of [the husband's] relationship with the claimant, he cannot be considered a disinterested third party witness whose statements would not be colored by affection for the claimant." (Tr. 14.) Further, as explained later in the ALJ's decision, the ALJ found that McEachern's testimony was entitled to little probative weight based on the record, and as discussed above, McEachern has failed to demonstrate any error by the ALJ in making that determination.

## RECOMMENDATION

For the foregoing reasons, the court finds that McEachern has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 28, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).